1  Mia Farber (SBN 131467)
   Eric J. Gitig (SBN 307547)
2  JACKSON LEWIS P.C.
   725 South Figueroa Street, Suite 2500
3  Los Angeles, California  90017-5408
   Telephone:  (213) 689-0404
4  Facsimile:  (213) 689-0430
   Emails:    Mia.Farber@jacksonlewis.com
5             Eric.Gitig@jacksonlewis.com

6  Semarnpreet Kaur (SBN 328518)
   JACKSON LEWIS P.C.
7  3390 University Avenue
   Suite 110
8  Riverside, California 92501
   Telephone:  (951) 848-7946
9  Emails:    Semarnpreet.Kaur@jacksonlewis.com

10 Attorneys for Defendants
   TA OPERATING LLC and
11 TRAVELCENTERS OF AMERICA INC.
   (incorrectly sued as TravelCenters of America, LLC)

12

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15

16 JOLENE    SABROWSKY    PETERS,          Case No.:
   individually, and on behalf of all others
17 similarly situated,
                                           **NOTICE OF REMOVAL OF ACTION
18            Plaintiffs,                   TO THE UNITED STATES DISTRICT
                                            COURT FOR THE CENTRAL
19       vs.                                DISTRICT OF CALIFORNIA
                                            PURSUANT TO 28 U.S.C. §§ 1332,
20 TA OPERATING, LLC DBA                    1441, 1446, and 1453 (CAFA)**
   TRAVELCENTERS OF AMERICA,
21 INC., a Delaware Limited Liability       (Filed concurrently with Notice of
   Company; TRAVELCENTERS OF               Removal; Declarations of Eric J. Gitig and
22 AMERICA, LLC, an unknown entity; and    Karen Kaminski; Civil Case Cover Sheet;
   DOES 1 through 10, inclusive,           Notice of Interested Parties; and Corporate
23                                          Disclosure Statement)
            Defendants.
24                                          Complaint Filed:  August 31, 2022

25

26 / / /

27 / / /

28 / / /

USDC CASE NUMBER                    1        NOTICE OF REMOVAL OF
                                             ACTION TO THE UNITED
                                             STATES DISTRICT COURT

1    **TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT**

2    **COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF JOLENE**

3    **SABROWSKY PETERS, AND HER ATTORNEYS OF RECORD:**

4            PLEASE TAKE NOTICE that Defendants TA OPERATING LLC and

5    TRAVELCENTERS OF AMERICA INC. (incorrectly sued as TravelCenters of America,

6    LLC) (collectively, "Defendants") hereby invoke this Court's jurisdiction under the

7    provisions of 28 U.S.C. §§ 1332, 1441, 1446 and 1453, and remove the above-entitled action

8    to this Court from the Superior Court of the State of California in and for the County of San

9    Bernardino based on the Class Action Fairness Act of 2005 ("CAFA").  In support thereof,

10   Defendants assert the following:

11                **SERVICE AND PLEADINGS FILED IN STATE COURT**

12           1.      On August 31, 2022, Plaintiff JOLENE SABROWSKY PETERS ("Plaintiff")

13   filed an unverified Class Action Complaint against Defendants in the Superior Court of the

14   State of California for the County of San Bernardino, entitled *JOLENE SABROWSKY*

15   *PETERS, individually, and on behalf of all others similarly situated, Plaintiffs, v. TA*

16   *OPERATING, LLC DBA TRAVELCENTERS OF AMERICA, INC., a Delaware Limited*

17   *Liability Company; TRAVELCENTERS OF AMERICA, LLC, an unknown entity; and*

18   *DOES 1 through 10, inclusive, Defendants*, Case No. CIVSB2216864, which sets forth the

19   following seven causes of action: (1) failure to pay minimum and straight time wages; (2)

20   failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize

21   and permit rest periods; (5) failure to timely pay final wages at termination; (6) failure to

22   provide accurate itemized wage statements; and (7) unfair business practices

23   ("Complaint"). As stated in paragraph 22 therein, Plaintiff brought this action on behalf of

24   herself and class consisting of "[a]ll persons who worked for any Defendant in California

25   as an hourly-paid or non-exempt employee at any time during the period beginning four

26   years and 178 days before the filing of the initial complaint in this action and ending when

27   notice to the Class is sent."

28

USDC CASE NUMBER                    2                    NOTICE OF REMOVAL OF
                                                         ACTION TO THE UNITED
                                                         STATES DISTRICT COURT

1  2. Defendant TA Operating LLC ("TA Operating") first received Plaintiff's

2 Summons and Complaint when it was served on September 16, 2022. Declaration of Eric

3 J. Gitig ("Gitig Decl.") ¶ 2.) A true and correct copy of the Summons, Complaint, and other

4 related court documents received by TA Operating on September 16, 2022 are attached as

5 **Exhibit "A"** to the Gitig Declaration. Plaintiff also attempted to serve TravelCenters of

6 America, LLC on September 16, 2022, however this entity no longer exists as it was

7 converted to TravelCenters of America Inc. on August 1, 2019.  (Id. at ¶ 3.)

8  3. On October 13, 2022, Defendants filed and served an Answer to the

9 Complaint in the San Bernardino Superior Court, making a general denial as permitted by

10 California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses.

11 (Id. at ¶ 4.) A true and correct copy of Defendants' Answer is attached as **Exhibit "B"** to

12 the Gitig Declaration.

13  4. As of the date of this Notice of Removal, **Exhibits "A"** and **"B"** to the Gitig

14 Declaration constitute all of the pleadings received or filed by Defendants in this matter.

15 (Id. at ¶ 5.)

### TIMELINESS OF REMOVAL

17  5. This Notice of Removal has been filed within 30 days after Defendants were

18 first served with a copy of Plaintiff's Summons and Complaint on September 16, 2022. (Id.

19 at ¶ 2.) Therefore, it has been filed within the time period mandated by 28 U.S.C. § 1446(b).

20 *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999) ("[T]he defendant's

21 period for removal will be no less than 30 days from service, and in some categories, it will

22 be more than 30 days from service, depending on when the complaint is received.").

### VENUE IS PROPER

24  6. This action was filed in the Superior Court in and for the County of San

25 Bernardino. Thus, venue of this action properly lies in the United States District Court for

26 the Central District of California pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a). Venue of

27 this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may

28 be venued in a judicial district where a substantial part of the events or omissions giving

1  rise to the claim occurred, and where, based on information and belief, the plaintiff resides.

2  (*See* Gitig Decl. ¶ 2, **Exhibit "A"** ["Complaint"] at ¶¶ 3, 7, 9, and 13.)

3  <u>**REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT**</u>

4  7.    Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.*

5  Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

6  
7  
8  
> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

9  8.    In addition, CAFA provides for jurisdiction in the district courts only where

10  the proposed class involves 100 or more members, or where the primary defendants are not

11  States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

12  9.    As set forth below, this is a civil action over which this Court has original

13  jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving

14  more than 100 members, and – based on the allegations in the Complaint – the matter in

15  controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a

16  citizen of a state different from Defendants.  *See* 28 U.S.C. §§ 1332(d) and 1453.

17  Furthermore, neither Defendants are a State, State official, or other governmental entity.

18  **A.    <u>The Putative Class Contains More Than 100 Members.</u>**

19  10.    CAFA provides that the district courts shall not have jurisdiction over class

20  actions where "the number of members of all proposed plaintiff classes in the aggregate is

21  less than 100." 28 U.S.C. § 1332(d)(5).

22  11.    Here, TA Operating records identify in excess of 100 individuals who, like

23  Plaintiff, have been employed by TA Operating as non-exempt employees in the State of

24  California between March 6, 2018 and the present (collectively referred to herein as "Putative

25  Class Members" or the "Putative Class"; the period between March 6, 2018[1] and the present

26  

27  
28  
---
[1]    Defendants dispute that that Rule 9(a) of the California Judicial Council's Emergency Rules in Response to the COVID-19 Pandemic applies to toll any of the applicable statutes of limitations in this action.  Nevertheless, for purposes of this removal,

1    is referred to herein as the "Putative Class Period"). (Declaration of Karen Kaminski

2    ("Kaminski Decl.") at ¶ 5.) Accordingly, the numerosity requirement for jurisdiction under

3    CAFA is satisfied.

4    **B.    None Of The Named Defendants Are Government Entities.**

5        12.    Neither Defendants are a State, a State official, or any other governmental

6    entity. (Gitig Decl. at ¶ 6, **Exhibit "C"** [Declaration of Mark R. Young ("Young Decl.")]

7    at ¶ 4.)

8    **C.    Minimal Diversity Is Satisfied Under CAFA.**

9        13.    The standard for establishing diversity of citizenship under CAFA is different

10    than diversity jurisdiction under 28 U.S.C. 1332(a)-(c). CAFA's diversity requirement is

11    satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs

12    is a citizen of a state in which none of the defendants are citizens.  28 U.S.C. § 1332(d)(2);

13    *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse

14    citizenship from the class' opponent, and no nondiverse members are named parties, the suit

15    may be brought in federal court even though all other members of the class are citizens of the

16    same State as the defendant."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied

17    Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-

18    91 (holding that to achieve its purposes, CAFA provides expanded original diversity

19    jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C.

20    § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist.

21    LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that

22    one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

23        14.    Citizenship of the parties is determined by their citizenship status at the

24    action's commencement. *See Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

25

26

27    Defendants have utilized a Putative Class Period commencing on March 6, 2018, "four

28    years and 178 days before the filing of the initial complaint in this action [on August 31, 2022]" based on the allegations in the Complaint.  (Complaint at ¶ 22.)

15.     For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008). Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

16.     Defendants are informed and believe, as alleged by Plaintiff in her Complaint, that Plaintiff was, at the time this action was commenced, and still is, resident and citizen of the State of California. (Complaint at ¶ 7; Kaminski Decl. at ¶ 3.)

17.     For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v. Carefusion Res., LLC,* No. 18-2852, 2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal. July 1, 2019). CAFA expressly states that "for purposes of this section .... an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized." 28 U.S.C. § 1332(d)(10). This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia Properties Anchorage,* 437 F.3d 894, 899 (9th Cir. 2006).

18.     With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend,* 559 U.S. 77, 80-81 (2010). Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id.* A corporation can only have one "nerve center." *Id.* at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weight corporate functions, assets, or revenues in each state. *Id.*

19.     At the time Plaintiff filed the Complaint and presently, TA Operating has been a limited liability company organized under the laws of the State of Delaware. (Young Decl. at ¶ 3.) At all relevant times, TA Operating's company headquarters – and thus its principal place of business – has been in the State of Ohio where the majority of TA's executive, administrative, financial and management functions are conducted, and from where the majority of TA Operating 's high-level officers direct, control, and coordinate and control the company's operations and activities. (Id.) Most members of TA Operating's executive team maintain their offices in the State of Ohio, while none of TA's executive officers reside in the State of California. (Id.) Accordingly, for purposes of removal under CAFA, TA Operating is citizen of the States of Delaware and Ohio and is not a citizen of the State of California.[2]

20.     Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while at least one Defendant (TA) was – and still is – a citizen of the States of Delaware and Ohio.[3] 28 U.S.C. § 1332(d)(2).

---

[2]     Alternatively, TA Operating is a citizen of the States of Maryland and Ohio based on the states in which its sole member is a citizen. (Young Decl. at ¶¶ 5 and 6.)

[3]     Because TA Operating is not a citizen of the State of California, the citizenship of Defendant TravelCenters of America Inc. (which is a citizen of the States of Maryland and Ohio) and the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA. (Young Decl. at ¶ 6.)  28 U.S.C. §§ 1332(d)(2) and 1441(a); *See Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1021 (9th Cir. 2007).

1  **D.    The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading**
2        **Of The Allegations Of The Complaint.[4]**

3        21.    Under CAFA, the claims of the individual members in a class action are
4  aggregated to determine if the amount in controversy exceeds the sum or value of
5  $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be
6  appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either
7  from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the
8  type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud.
9  Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of
10 interstate class actions in state or federal court should be resolved in favor of federal
11 jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all
12 matters in controversy' in a purported class action 'do not in the aggregate exceed the sum
13 or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case
14 . . . . Overall, new section 1332(d) is intended to expand substantially federal court
15 jurisdiction over class actions. Its provisions should be read broadly . . .").

16        22.    In determining whether the amount in controversy exceeds $5,000,000, the
17 Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth*
18 *Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp. 993, 1001 (C.D. Cal. 2002)
19 (*citing Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in
20 controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.,*
21 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low
22 end of an open-ended claim")). Moreover, the argument and facts set forth herein may
23 appropriately be considered in determining whether the jurisdictional amount in

24

25 [4]    Defendants deny each and every allegation set forth by Plaintiff in the Complaint and
26 deny that Plaintiff or Putative Class Members are entitled to any compensatory or statutory
   damages, injunctive relief, restitution, penalties, attorneys' fees, or any other relief.
27 Defendants also deny that this action can proceed as a class action, in part because Plaintiff
   signed an arbitration agreement with a class waiver.  Notwithstanding the above, removal of
28 this action is proper given that removal is based on the allegations asserted in the Complaint.

1   controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002)

2   (*citing Willingham v. Morgan,* 395 U.S. 402, 407 n.3 (1969)).

3        23.    Notably, "[t]here is no obligation by defendant to support removal with

4   production of extensive business records to prove or disprove liability and/or damages with

5   respect to plaintiff or the putative class members at this premature (pre-certification) stage

6   of the litigation." *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15

7   (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a

8   preponderance of the evidence the aggregate amount in controversy exceeds the

9   jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs.,* 28 F.4th 989, 991-994 (9th

10   Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis

11   – a presumption against CAFA jurisdiction, and holding instead that the defendant was only

12   required to show the amount in controversy by a preponderance of evidence); *Rodriguez v.*

13   *AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden

14   of proof imposed upon a defendant to establish the amount in controversy is the

15   preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d

16   395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total

17   amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence*

18   *Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable

19   assumptions in estimating the amount in controversy, which "need not be proven").

20        24.    In *Dart Cherokee Basin Operating Company, LLC v. Owens,* the United States

21   Supreme Court held that, whereas here, the complaint is silent as to whether the amount in

22   controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of

23   removal need include only a *plausible* allegation that the amount in controversy exceeds the

24   jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart,* the

25   Ninth Circuit confirmed "a removing defendant's notice of removal need not contain

26   evidentiary submissions but only plausible allegations of the jurisdictional elements," and

27   further that "when a defendant's allegations of removal jurisdiction are challenged, the

28   defendant's showing on the amount in controversy may rely on reasonable assumptions."

1    *Salter v. Quality Carriers, Inc.,* 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020)

2    (citations and internal quotation marks omitted). Further, "'[n]o "antiremoval presumption

3    attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication

4    of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.,* 2015 U.S.

5    Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart,* 135 S. Ct. at 554. On

6    the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal.

7    *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183-84 (9th Cir. 2015).

8         25.    Moreover, if a plaintiff asserts statutory violations, the court must assume that

9    the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz v. Pilot*

10   *Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As

11   these allegations reveal, plaintiff includes no fact-specific allegations that would result in a

12   putative class or violation rate that is discernibly smaller than 100%, used by defendant in its

13   calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she

14   could have alleged facts specific to her claims which would narrow the scope of the putative

15   class or the damages sought.") (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987));

16   *see also Arreola v. The Finish Line,* No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D.

17   Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing

18   an action under CAFA to make assumptions when calculating the amount in controversy—

19   such as assuming a 100 percent violation rate, or assuming that each member of the class will

20   have experienced some type of violation— when those assumptions are reasonable in light

21   of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d

22   1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating

23   the amount in controversy when the complaint does not allege a more precise calculation.").

24        26.    While Plaintiff does not allege a specific amount in damages, her Complaint

25   was filed as an "unlimited" jurisdiction civil case on behalf of the Putative Class. As such,

26   Plaintiff is claiming that the monetary damages and restitution she is seeking exceeds the

27

28

$25,000 minimum jurisdiction limits of the California Superior Court,[5] which is confirmed by the fact that she designated her case as "Unlimited (Amount demanded exceeds $25,000)" on her Civil Case Cover Sheet. (Gitig Decl. ¶ 2, **Exhibit "A"** at Civil Case Cover Sheet.) Thus, based on the allegations in the Complaint, which contend that "Plaintiff's claims (or defenses, if any) are typical of all [Putative Class Members]," it is plausible that Plaintiff is seeking at least $25,000 [the unlimited jurisdictional amount] per Putative Class Member, which places over $125,000,000 in controversy. (Complaint at ¶ 25(b); Kaminski Decl. at ¶ 5.)  *See Abrego v. The Dow Chem. Co.,* 443 F.3d 676, 689 (2006) (finding jurisdictional amount met where complaint sought no specific amount in damages but pled the amount in controversy to exceed $25,000 and there were 1,160 class members).

27.    In the alternative, and without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the causes of action alleged in the Complaint[6] also conservatively places an aggregate amount in controversy exceeding **$7,478,333,** exclusive of attorneys' fees, interest, and costs, as follows:

### a. Failure to Pay Minimum Wages (First Cause of Action)

The Complaint alleges that "throughout the statutory period, Defendants maintained a systematic, company-wide policy and practice of [f]ailing to pay employees for all hours worked, including all minimum [wage]." (Complaint at ¶¶ 4(a), 14-15, and 29-38.) Given these purported violations, Plaintiff claims that "Plaintiff and the Class are entitled to recover liquidated damages… all unpaid minimum and straight time wages, interest, and reasonable attorneys' fees and costs." (Id. at ¶ 36 and 38.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover, on average, at least one hour of minimum wage for every four weeks worked for all Putative Class Members, which would place over $1,100,000 in controversy in connection with her minimum wage claim

---

[5]    *See* California Code of Civil Procedure §§ 86(a) and 88.
[6]    *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

1   ($11.00 minimum wage rate[7] x 0.25 hours per week x 200,000 workweeks, plus an equal

2   amount in liquidated damages). (Kaminski Decl. at ¶ 6.)

### b.  Failure to Pay Overtime Wages (Second Cause of Action)

4        The Complaint alleges that "throughout the statutory period, Defendants maintained

5   a systematic, company-wide policy and practice of [f]ailing to pay employees for all hours

6   worked, including all … overtime," because "Plaintiff and the Class have worked more

7   than eight hours in a workday and/or more than forty (40) hours in a workweek, as

8   employees of Defendants." (Complaint at ¶¶ 4(a), 14-15, and 39-47.) Given these purported

9   violations, Plaintiff claims she and Putative Class Members are entitled to recover overtime

10  wages. (Id. at ¶ 42-48.) Thus, based on the allegations in the Complaint, it is plausible that

11  Plaintiff is seeking to recover, on average, at least one hour of overtime wages for every four

12  weeks worked for all Putative Class Members, which would place over $825,000 in

13  controversy in connection with her overtime claim ($16.50 overtime rate [$11.00 x 1.5] x 0.25

14  hours per week x 200,000 workweeks).  (Kaminski Decl. at ¶ 6.)

### c.  Failure to Provide Meal Periods (Third Cause of Action)

16       Plaintiff alleges that Defendants' "policy and practice was not to provide meal

17  periods to Plaintiff and the Class in compliance with California law." (Complaint at ¶¶

18  4(b), 14-16, and 48-50.) Given these purported violations, Plaintiff claims she and the

19  Putative Class Members "are entitled to be paid one hour of additional wages for each

20  workday he or she was not provided with all required meal period(s), plus interest thereon."

21  (Id. at ¶51.) Thus, based on the allegations in the Complaint, it is plausible that Plaintiff is

22  seeking to recover, on average, at least one meal period premium for every four weeks for all

23  Putative Class Members, which would place over $550,000 in controversy in connection with

24

25

26  ───────────────

27  [7]     For purposes of calculating the amount in controversy in this Notice of Removal,
Defendants utilized an hourly rate of $11.00 per hour, the lowest minimum wage rate in effect
during the Putative Class Period.  *See* California Department of Industrial Relations History

28  of California Minimum Wage Chart (https://www.dir.ca.gov/iwc/minimumwagehistory.htm).

1    her meal period claim ($11.00 hourly rate x 0.25 meal periods per week x 200,000
2    workweeks).  (Kaminski Decl. at ¶ 6.)

3               *d.   Failure to Authorize and Provide Rest Periods (Fourth Cause of Action)*

4               Similar to her third cause of action, Plaintiff contends that Defendants "regularly
5    required Plaintiff and the Class to work in excess of four consecutive hours a day without
6    Defendants authorizing and permitting them to take a 10-minute, uninterrupted, duty-free
7    rest period for every four hours of work (or major fraction of four hours), or without
8    compensating Plaintiff and the Class for rest periods that were not authorized or permitted."
9    (Complaint at ¶¶ 4(c), 14-15, 17, 52-54.) Given these purported violations, Plaintiff claims
10   she and the Putative Class Members "are entitled to be paid one hour premium wages rate
11   for each workday he or she was not provided with all required rest break(s), plus interest
12   thereon." (Id. at ¶55.) Thus, based on the allegations in the Complaint, it is plausible that
13   Plaintiff is seeking to recover, on average, at least one rest period premium for every four
14   weeks for all Putative Class Members, which would place over $550,000 in controversy in
15   connection with her rest period claim ($11.00 hourly rate x 0.25 rest periods per week x
16   200,000 workweeks).  (Kaminski Decl. at ¶ 6.)

17              *e.   Failure to Timely Pay Final Wages (Fifth Cause of Action)*

18              For Plaintiff's fifth cause of action, Plaintiff asserts that Defendants "failed, and
19   continue to fail to pay terminated Class Members, without abatement, all wages required
20   to be paid by California Labor Code §§ 201 and 202 either at the time of discharge, or
21   within seventy-two (72) hours of their leaving Defendants' employ." (Complaint at ¶ 58.)
22   Plaintiff further alleges "on information and belief, Defendants' failure to timely pay
23   Plaintiff's final wages when her employment terminated was not a single, isolated incident,
24   but was instead consistent with Defendants' policy and practice that applied to Plaintiff
25   and the Class." (Id. at ¶¶ 4(d) and 18.) During the applicable three-year statute of limitations
26   period (*i.e.*, March 6, 2019, to the present), at least 2,000 Putative Class Members have been
27   terminated, resigned, or have otherwise separated from their employment with TA.  (Kaminski
28   Decl. at ¶ 5.)  Thus, based on the allegations in the Complaint, it is plausible that Plaintiff has

1    placed over $3,520,000 in controversy in connection with her claim for waiting time penalties

2    ((2,000 Putative Class Members x $11.00 hourly rate x 8 hours x 30 days) x 66.66%).  (Id.)

### f.    Failure to Provide Compliant Wage Statements (Sixth Cause of Action)

4    For Plaintiff's sixth cause of action, she asserts that Defendants "maintained a

5    systematic, company-wide policy and practice of . . ." failing to provide Plaintiff and

6    Putative Class Members "with accurate, itemized wage statements showing all applicable

7    hourly rates, all overtime hourly rates, and all gross and net wages earned (including correct

8    hours worked, correct wages for meal periods that were not provided in accordance with

9    California law, and correct wages for rest periods that were not authorized and permitted

10    to take in accordance with California law)." (Complaint at ¶¶ 4(e),19, and 65.) Given these

11    purported violations, Plaintiff claims she and the Putative Class Members "are entitled to

12    recover from Defendants the greater of their actual damages caused by Defendants' failure

13    to comply with California Labor Code § 226(a), or an aggregate penalty not exceeding four

14    thousand dollars ($4,000) per employee." (Id. at ¶69.) During the one-year statute of

15    limitations period mandated under Labor Code section 226 (*i.e.*, March 6, 2021 to the

16    present), TA Operating has issued in excess of 15,000 bi-weekly wage statements to over

17    2,000 Putative Class Members.  (Kaminski Decl. at ¶ 7.)  Thus, based on the allegations in

18    the Complaint, it is plausible that Plaintiff has placed over $933,333 in controversy in

19    connection with her wage statement claim (($50 per first wage statement x 2,000 Putative

20    Class Members who worked between August 5, 2021 and September 14, 2022, plus $100

21    per each subsequent wage statement x 13,000 pay periods worked by Putative Class

22    Members between August 5, 2021 and September 14, 2022, up to a maximum of $4,000

23    per Putative Class Member) x 66.66%).  *See* Labor Code § 226(e)(1); *see also Lucas*, 2018

24    U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with

25    this many violations alleged by Plaintiff, every one of the wage statements issued during

26    the one-year period could very likely have been noncompliant.").

27    28.    Plaintiff also seeks an unspecified amount of attorneys' fees in connection with

28    her putative class claims for unpaid minimum wages, unpaid overtime wages, meal period

violations, rest period violations, failure to timely pay final wages at termination, and failure to provide accurate itemized wage statements, which the Court should consider and include in the amount in controversy. (Complaint at ¶¶ 38, 46, 51, 55, 62, 70, and pgs. 20-23 Prayer for Relief.) *See, e.g., Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.,* 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California,* 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

29.    "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the

1    projected damages." *Fong v. Regis Corp.,* No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275,

2    at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC,*

3    No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June

4    12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to

5    be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart*

6    *Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D.

7    Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a

8    plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v.*

9    *Stericycle, Inc.,* No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51

10   (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in

11   controversy a potential fee award of 25% of the value of certain of the substantive claims.").

12        30.    The Court should therefore consider attorneys' fees of at least $1,869,583, a

13   conservative estimate at 25% of the aggregate amount in controversy calculated in

14   Paragraph 27 above in connection with Plaintiff's putative class claims for unpaid overtime

15   wages, unpaid minimum wages, meal period violations, rest period violations, wage

16   statement violations, and expense reimbursements. *See, e.g., Oda v. Gucci Am., Inc.,* 2015

17   U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions

18   regarding attorneys' fees to be "reasonable" on removal where the defendant stated

19   "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in

20   controversy before attorneys' fees" of "$5,316,978").

21        31.    Thus, for the reasons discussed above, and without conceding or admitting to

22   the underlying merit of Plaintiff's claims, it is plausible that the aggregate amount in

23   controversy in connection with Plaintiff's putative class claims (over **$9,347,916**)

24   surpasses the $5,000,000 jurisdictional threshold required under CAFA.

                        **NOTICE TO ALL PARTIES AND STATE COURT**

26        32.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that

27   a copy of this Notice of Removal and all supporting papers will be served promptly on

28

---

USDC CASE NUMBER                         16                    NOTICE OF REMOVAL OF
                                                              ACTION TO THE UNITED
                                                              STATES DISTRICT COURT

1  Plaintiff's counsel and filed with the Clerk of the San Bernadino Superior Court. Therefore,

2  all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

3  ## CONCLUSION

4      33.    Based on the foregoing, Defendants hereby remove the above-captioned

5  action from the San Bernadino County Superior Court to this Court based on CAFA

6  requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453) and respectfully request that

7  this Court retain jurisdiction for all further proceedings.

8

9  Dated:  October 14, 2022          JACKSON LEWIS P.C.

10                                       By:      _/s/ Eric J. Gitig_
                                                 Mia Farber
11                                               Eric J. Gitig
                                                 Semarnpreet Kaur
12
                                                 Attorneys for Defendants
13                                               TA OPERATING LLC and
                                                 TRAVELCENTERS OF AMERICA INC.
14

15  4880-1053-2150, v. 1

16

17

18

19

20

21

22

23

24

25

26

27

28

USDC CASE NUMBER              17              NOTICE OF REMOVAL OF
                                             ACTION TO THE UNITED
                                             STATES DISTRICT COURT